14111

WHISENHUNT *ET AL.* v. SANDEL *ET AL.*

(181 S. E., 61)

*Messrs. Berry & Berry* and *Wolfe & Wolfe,* for appellants.

*Messrs. Lide & Felder* and *W. D. Martin,* for respondents,

July 8, 1935.

The opinion of the Court was delivered by Mr. Justice Fishburne.

This case was originally heard at our December term, 1934, at which time his Honor, Judge J. Henry Johnson, of the Fourteenth Judicial Circuit, was a member of the Court, acting, by special appointment, as Associate Justice.

Judge Johnson, as the organ of the Court, prepared an opinion, passing upon all of the issues raised by the exceptions on appeal, but this opinion was not reported because a reargument of the case was ordered to be made *de novo* before the Court as now regularly constituted. The reargument was had at our June term.

After a painstaking investigation of the record, and of the authorities applicable to the questions involved, we approve and adopt as the judgment of this Court the well-considered opinion heretofore prepared by the learned Circuit Judge, which is as follows:

More than four years ago H. D. Sandel instituted his action in claim and delivery against Geo. H. Whisenhunt in an effort to recover the possession of certain crops and mules alleged to have been conveyed to him by Whisenhunt by way of chattel mortgage. Claiming immediate delivery of the property, Sandel, pursuant to the provisions of the Code (now Section 555), executed the usual undertaking in claim and delivery with his codefendants here, Dorothy Sandel and L. H. Rickenbaker, as sureties thereon. Acting thereunder, the sheriff seized certain crops and mules, and (Whisenhunt not procuring their return by the statutory redelivery bond), sold the same at public outcry for a sum much less than the alleged debt and the alleged value.

Whisenhunt did not, by his answer in that cause, demand a return of the property, but, by counterclaim, sought actual

and punitive damages against Sandel for the alleged unlawful seizure of his property, and for the fraudulent conduct of Sandel in the execution of the mortgage procured by the latter. Upon trial, Whisenhunt, upon such counterclaim, had a verdict against Sandel for $1,337.43, actual damages, and for $700.00 punitive damages, no return of the seized property being asked or awarded. Thereafter, judgment was duly entered upon such verdict against Sandel for $2,037.43, with costs of $68.91, which, upon appeal, was affirmed. See *Sandel v. Whisenhunt,* 168 S. C., 129, at pages 131-135, 167 S. E., 166.

Subsequently, Whisenhunt assigned his interest in such judgment to his co-plaintiffs here, Davis and Martin, and the instant appeal comes to us as the result of an action by the owners of such judgment against H. D. Sandel, as principal, and against Dorothy Sandel and Rickenbaker, as his sureties, upon the plaintiff's undertaking in the first action. By consent of the parties, a jury trial was waived, and the instant cause heard by the County Judge of Orangeburg County, who, by an order which will be reported, adjudged that the plaintiffs, Nettie Davis and W. B. Martin, now sole owners of such judgment in the claim and delivery action, should recover of defendants, upon their undertaking, the sum originally recovered in that action against H. D. Sandel.

As will be observed from the foregoing history of the litigation, and the procedure followed by Whisenhunt in the first action, wherein he failed to demand a return of the property alleged by him to have been unlawfully seized by Sandel by virtue of the latter's (and his sureties') undertaking, but sought and recovered damages, actual and punitive, upon his counterclaim for the alleged unlawful seizure, and for the fraud alleged to have been practiced by Sandel prior to the institution of the action in claim and delivery. This appeal presents another of that long line of confusing cases arising out of the attempted foreclosure of a chattel mortgage by way of an action in claim and delivery.

The exceptions, which will be reported, attack the judgment of the County Court from many angles, but counsel for appellants, in their "statement," aver that only three questions are raised, which, more accurately stated, perhaps, than counsel have stated them, are as follows:

(1) Was there error in excluding the testimony of the defendant Rickenbaker?

(2) Are sureties upon a plaintiff's undertaking in claim and delivery responsible for the payment of a judgment rendered against the plaintiff for actual and punitive damages for acts, fraudulent or wrongful, committed by plaintiff before the commencement of such action?

(3) Are sureties upon plaintiff's undertaking in claim and delivery liable for the payment of a judgment rendered against plaintiff for actual and punitive damages for acts, fraudulent or otherwise, done after the execution of such undertaking?

The very interesting, and serious, question as to whether or not Whisenhunt released the sureties from their obligation under the undertaking, by waiving his right to a verdict and judgment for the return of the property (as he had a right to do under the decisions of this Court in *Duc v. Seel,* 134 S. C., 10, 131 S. E., 778, and *Sandel v. Whisenhunt, supra,* 168 S. C., 129, at page 135, 167 S. E., 166, and see, also, *Moore v. Sanders et al.,* 114 S. C., 350, 103 S. E., 589, and *Wilkins v. Willimon et al.,* 128 S. C., 509, 122 S. E., 503), though raised in the answer of the sureties, seems to have been abandoned, since it was not urged in the Court below, either by their motion for nonsuit or directed verdict; and none of the exceptions properly present it. It is true that the first exception charges error on the part of the trial Judge "in refusing to grant a nonsuit * * * upon the ground that the evidence failed to show any liability against the defendants upon which a verdict and judgment could be based," but the transcript of the proceedings below shows that counsel moved for a nonsuit on the ground that the

judgment roll in the former action should be stricken from the evidence.

Considering the questions raised, in their inverse order, we hold that sureties upon an undertaking in claim and delivery cannot be held liable for the payment of a judgment against their principal for punitive damages for acts done by such principal after the execution of the bond in claim and delivery. Indeed, as pointed out in *Sandel v. Whisenhunt, supra,* 168 S. C., 129, at pages 136, 137, 167 S. E., 166, even the principal cannot be mulcted in punitive damages for anything occurring after the execution of such undertaking, since the statute (Section 661, Code of 1932), prohibits the same; and it goes without saying that the obligation of the sureties is no greater than that of their principal.

The same section of the Code, however, expressly provides that actual damages may be recovered by a defendant for the taking and withholding of his property by the plaintiff, and there is no inhibition against the recovery of such damages for acts committed after the execution of plaintiff's undertaking. See, also, Section 602 of the Code, and *Sandel's case, supra,* 168 S. C., 129, at page 137, 167 S. E., 166. In the former action the verdict of the jury established the fact that plaintiff's seizure under the claim and delivery proceedings, and his subsequent dealings with the property after he came into possession under the undertaking, were unlawful; and the sureties are responsible for the payment of the judgment rendered against their principal for actual damages. *Thomson v. Joplin,* 12 S. C., 580; *Parish v. Smith,* 66 S. C., 424, 45 S. E., 16; *Bolt v. Milam,* 110 S. C., 399, 96 S. E., 614. Their undertaking is breached when judgment is rendered against their principal, and they are bound by such judgment. See authorities last cited.

As to the second question, we are of the opinion that sureties upon a plaintiff's undertaking in claim and delivery are not liable for the payment of a judgment

rendered against the plaintiff, their principal, for either actual or punitive damages for acts, fraudulent or wrongful, committed by such plaintiff-principal prior to the institution of the action in claim and delivery and before the execution of their undertaking. It is true that the language of Section 555, upon a casual reading thereof, seems broad enough to include such liability, but this section must necessarily be construed in connection with Sections 602 and 661, which provide for an assessment of the "damages, both actual and punitive * * * which the prevailing party has sustained by reason of the detention or taking and withholding such property," and when a plaintiff in claim and delivery (as was the case in *Sandel v. Whisenhunt*), has not seized or detained the property prior to the institution of the action, but has wronged the defendant therein in some other manner months prior to the commencement of such action, it would seem that his sureties should be responsible only for a return of the property, or its value, and such damages as result from the seizure under the bond in such action. See *Wilkins v. Willimon,* 128 S. C., 509, at pages 523, 524, 122 S. E., 503.

Applying the reasoning of the Court to the instant cause, it seems too plain for argument that the obligation of the sureties upon a plaintiff's undertaking in claim and delivery is simply to indemnify the defendant against any loss he might suffer by being compelled to surrender possession of the property pending the trial of·the action. The sureties say to the defendant, in effect: "You shall not suffer by reason of the seizure of the property in dispute under our bond; if the Court decides that such seizure, though pursuant to judicial process, is wrongful, and that you are entitled to the possession of such property, we will see that it is returned to you, or its value paid to you, in the event a return cannot be made; and we will also pay you such damages as you suffer by reason of the seizure and detention of your property." Surely, it cannot be contended that the sureties should

be held responsible for some fraud practiced upon defendant by their principal long before the institution of the action in claim and delivery.

As will be seen by reference to the opinion of this Court in *Sandel v. Whisenhunt,* 168 S. C., 129, at pages 135 and 137, 167 S. E., 166, Whisenhunt's counterclaim really contained two causes of action, one for the unlawful seizure under the claim and delivery undertaking, the other for fraud practiced upon him by Sandel when the mortgage was executed, and long before the institution of the action. Under the charge of the County Judge (*Sandel's case,* 168 S. C., 129, at page 135, 167 S. E., 166), punitive damages could not have been awarded by the jury for anything occurring after the execution of the bond, and since the property was not seized until after it was executed, the verdict for punitive damages was necessarily awarded for the fraud practiced upon Whisenhunt by Sandel at the time the mortgage was originally executed. The obligation of the sureties certainly did not embrace responsibility for that act. As said by Mr. Justice Fraser in *Moore v. Sanders et al.,* 114 S. C., 350, 103 S. E., 589, 590:

"The liability of the sureties in claim and delivery, as stated in the statute, in the bond, and in the case of *Thomson v. Joplin,* 12 S. C., 580, is very broad. It matters not how broad language may be, yet it is always limited to the subject of which it treats. * * *

"The form of the judgment was prescribed by the statute and it was not in contemplation of law that the liability of the sureties should exceed the scope of the action, to wit, the enforcement of the right of possession and damages for the unlawful taking or withholding."

In that case judgment was entered for a sum in excess of what the property, when returned, brought when sold by the sheriff, and recovery against the sureties for the deficiency was denied, although their undertaking (see Section 558), was not only for a return of the property to plaintiff, if re-

turn were adjudged, but also "for the payment to him of such sum as may, for any cause, be recovered against the defendant." Under a literal construction of such broad language, disregarding the nature and scope of an action in claim and delivery, it would seem that plaintiff should have recovered against the sureties. The language of Section 555, applicable to a plaintiff's sureties, is no broader; indeed, it is identical in wording.

Similarly, in *Wilkins v. Willimon, supra,* it was held that where, in claim and delivery, plaintiff recovers a judgment, not for the recovery of the property, or its value, with damages for detention, but for the amount of the debt secured by chattel mortgage, the surety is not liable on a redelivery bond under Section 474, Code Civ. Proc., 1922 (Section 558, Code of 1932), in view of Sections 542 and 600, Code Civ. Proc., 1922 (Sections 602 and 661, Code of 1932). In that case, also, the undertaking of the sureties was to pay plaintiff such sum as might, for any cause, be recovered against defendant, but this Court limited the meaning of those words, and the liability of the surety, to the nature and scope of the action; to the enforcement of the right of possession, and damages for the unlawful taking or detention.

Although the decisions of this Court are, in some instances, confusing and apparently in conflict, the views announced in *Moore v. Sanders* and in *Wilkins v. Willimon* are not only the most recent expression of our opinion respecting the liability of sureties in actions in claim and delivery, but they are, it seems to us, more nearly in accord with what the parties necessarily have in contemplation when the sureties enter upon their engagement, considering the nature and scope of an action in claim and delivery, and construing Sections 555 and 558 (Code of 1932), in connection with Sections 602 and 661. See, also, *Duc v. Seel,* 134 S. C., 10, at page 17, 131 S. E., 778, which is in accord with *Moore v. Sanders* and *Wilkins v. Willimon* on the par-

ticular point under discussion. In that case the property was worthless when trial was had, and plaintiff had a verdict for $1,000.00, the alleged value of the property at the time of the commencement of the action. It was held that plaintiff elected, by such verdict, to release the defendant's surety—by waiving his right to a verdict for a return of the property —and this case is cited with approval in *Sandel v. Whisenhunt, supra.*

While the conclusion reached upon the second question relieves the sureties of liability for the payment of the amount of punitive damages embraced in the judgment in the former action, they cannot escape responsibility for the payment of the amount of actual damages included in such judgment, for, as stated in the opinion in *Sandel v. Whisenhunt, supra,* 168 S. C., 129, at page 135, 167 S. E., 166, the jury found that Whisenhunt did not owe Sandel anything on the mortgage which was made the basis of the latter's action in claim and delivery. Consequently, the seizing of the chattels by virtue of the undertaking was wrongful, and, for actual damages resulting therefrom, Sandel and his sureties are liable. Sandel had alleged that such property was of the value of $1,500.00, and the verdict for actual damages was actually less than that. The seizure and sale, at Sandel's instance, necessarily occasioned Whisenhunt's actual damages.

The first question challenges the ruling of the trial Judge in refusing to permit the defendant-surety, Rickenbaker, to testify as to what property was seized in the former action, and to give evidence as to its value. There was no error in that respect, since that issue was settled in the former trial, and the sureties are bound by the judgment thereabout—as it applies to actual damages. *Thomson v. Joplin; Parish v. Smith; Bolt v. Milam,* all *supra.*

The constitutional questions raised by the exceptions are without merit. No authorities in support of appellant's con-

tentions thereabout have been cited, and we have found none that would sustain them.

It is the judgment of this Court that the judgment below be reduced by the sum of $700.00, the amount of punitive damages in controversy, and that, as so modified, it be affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.