17318

L. B. PRICE MERCANTILE COMPANY, Respondent, v.
R. C. REDD, Appellant

(99 S. E. (2d) 57)

*Clement L. McEachern, Esq.,* of Greenville, *for Appellant.*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondent,*

July 2, 1957.

LEGGE, Justice.

Respondent employed one Walter M. Carver as collector and salesman from October 22, 1954, to February 9, 1955. In connection with Carver's employment, the appellant, under date October 6, 1954, executed and delivered to respondent an "Indemnity Agreement" reading as follows:

"Mr. Walter Mathew Carver (herein called applicant) has applied to the L. B. Price Mercantile Co. for a position as collector. General Casualty Company of America has agreed to issue a bond covering any shortage by dishonesty for which the applicant may be responsible, provided that a property owner or property owners will agree to reimburse it for any shortage due to any dishonesty of the applicant. I (we) have known the applicant for 14 years and have always found him honest and trustworthy. I (we) own real estate located at 23 Charlotte St., Greenville, S. C., and the title to the said real estate is in the name of the following: R. C. Redd.

"I (we) agree to reimburse General Casualty Company of America for any loss up to Two Hundred Dollars ($200-.00) which may occur by reason of any dishonest act of the

said applicant, and also to pay the L. B. Price Mercantile Co. any amount that may be due and owing it by the applicant but our aggregate liability hereunder shall be limited to $200.00".

In May, 1955 respondent sued Carver in the Greenville County Court, alleging that between October 22, 1954, and February 9, 1955, he had made collections of money owed to respondent in various amounts, aggregating $262.25, which he had failed to remit to respondent, although demand had been made of him therefor; and that he was thereby indebted to respondent in that amount, together with interest, for which judgment was prayed. In that action Carver was adjudged in default; and judgment was accordingly entered against him on July 7, 1955, in the amount of $262.25 and costs. The judgment roll in that action consisted of: (1) the summons and unverified complaint; (2) affidavit of default, signed and sworn to by counsel for the plaintiff under date July 7, 1955; (3) order for judgment issued by the Judge of the Greenville County Court under date July 7, 1955; and (4) the judgment entered on July 7, 1955, as before mentioned. The order for judgment contains the following:

"It appears that this is an action for monies had and received and which the defendant failed to remit to the plaintiff. It further appears from the verified statement of the plaintiff and from the testimony that these monies were in the amount of Two Hundred Sixty-two and 25/100 ($262-.25) Dollars. * * *."

. In September, 1955, respondent brought this action against the appellant in the Greenville County Court, the complaint alleging the execution by appellant of the indemnity agreement of October 6, 1954; and that Carver had, during the period October 22, 1954, to February 9, 1955, in the course of his employment by respondent, collected moneys owed to respondent in various amounts totalling $262.25, which he had failed to remit, despite demand therefor; and praying judgment in the amount of $200.00. The answer,

admitting the execution of the indemnity agreement, denied the other allegations of the complaint for lack of information.

At the trial of this case before the Judge of the Greenville County Court and a jury, plaintiff's counsel, having failed to prove his case by the hearsay testimony of respondent's office manager, offered in evidence the judgment roll in the case of *L. B. Price Mercantile Company v. Walter Mathew Carver* before mentioned, and it was admitted without objection on the part of the defendant. Thereupon defendant's counsel, having moved unsuccessfully for a directed verdict upon the ground that no dishonest act on the part of Carver had been shown, sought to attack the judgment roll in the former case upon the grounds: (1) that the complaint in that action was unverified; (2) that the judgment roll contained no verified statement of account and no testimony; and (3) that there was nothing in that record showing dishonesty on the part of Carver. Such attack was not permitted by the Presiding Judge, who then directed a verdict for the plaintiff in the amount of $200.00. This appeal followed. It is based upon two exceptions, which charge that the trial judge erred:

1. In holding the judgment against Carver conclusive of appellant's liability under the indemnity agreement, appellant not having been a party to the former action; and

2. In refusing to permit appellant to attack the former judgment upon the grounds before mentioned.

Appellant's position is untenable for two reasons. In the first place, it is based upon the erroneous belief that his liability to respondent under the indemnity agreement was only to make good losses resulting from dishonesty on the part of Carver. In the second, the judgment was immune from collateral attack upon the grounds proposed.

The "indemnity agreement" imposed upon appellant two distinct obligations, up to the aggregate amount of $200.00: (1) to reimburse the bonding company for any loss that it might sustain by reason of dishonesty on the part of Carver; and (2) to pay any debt that Carver might owe to respond-

ent. With respect to the bonding company, appellant's contract was one of indemnity; with respect to the respondent, it was one of unconditional guaranty, and appellant's liability thereunder was substantially that of surety for the payment of any indebtedness of Carver. 24 Am. Jur., Guaranty, Sections 10, 11, pp. 879, 880; *Georgian Company v. Britton,* 141 S. C. 136, 139 S. E. 217.

The authorities are by no means unanimous as to the evidentiary force, in an action against the surety, of a judgment against the principal rendered in an action to which the surety was not a party and of which he had no notice. 50 Am. Jur., Suretyship, Section 200, p. 1036 *et seq.;* 21 Am. Jur., Executors and Administrators, Section 999, p. 937. Prefacing the annotation to *Slattery v. Schapero,* 217 Mass. 71, 104 N. E. 440, in Ann. Cas. 1915D, 399, at page 401, the author says: "The question how far a judgment against the principal is evidence against the surety has proved a perplexing one for the courts, and it would be difficult to find one on which the opinions are in more hopeless confusion". Further annotations on the subject may be found in 40 L. R. A., N. S., 698, and in L. R. A. 1918E, 814; but review of the decisions in other jurisdictions is not necessary for determination of the case at bar.

The confusion above referred to may be accounted for, at least in part, by the fact that not always has distinction been clearly drawn between (1) the evidentiary quality of the judgment in relation to the surety's obligation, and (2) the validity of the judgment. So far as concerns its evidentiary quality, the conclusiveness of the judgment must be determined primarily by the terms of the surety's contract. Its validity and consequent conclusiveness against collateral attack are matters independent of the contract of suretyship.

Where, as in replevin, the bond is conditioned for the payment of a judgment against the principal, it is well settled that a judgment of the kind contemplated by the bond is, from an evidentiary standpoint, conclusive against the surety. *Thomson v. Joplin,* 12 S. C. 580; *Parish v. Smith,* 66 S. C.

424, 45 S. E. 16; *Gibbes Machinery Company v. Moore*, 107 S. C. 327, 92 S. E. 1033; *Bolt v. Milam*, 110 S. C. 399, 96 S. E. 614; *Whisenhunt v. Sandel*, 177 S. C. 207, 181 S. E. 61, 100 A. L. R. 376.

A decree of the Ordinary adjudging the amount due by an administrator upon accounting was held conclusive against his surety in *Shelton v. Cureton*, 3 McCord L. (14 S. C. L.) 412, and in *Lyles v. Brown*, Harp. L. (16 S. C. L.) 31. In *Norton v. Wallace*, 2 Rich. L. (31 S. C. L.) 460, such a judgment was held conclusive upon the surety as to the fact of the administrator's failure fully to account, but not conclusive as to his default to the amount set out in the judgment. In *Lyles v. Caldwell*, 3 McCord L. (14 S. C. L.) 225, such a decree was held, in an action against the surety, to be at least *prima facie* evidence of the sum due. Such also was the holding in *Kaminer v. Hope*, 9 S. C. 253, where the surety was permitted to show that he was not liable for the full amount of the judgment against the administrator. And in *McKenzie v. Standard Accident Insurance Company*, 189 S. C. 475, 1 S. E. (2d) 502, the circuit decree, which was approved in result by this court, reviewed many of the earlier decisions and concluded that the surety on an administration bond was not bound by a decree rendered in the Probate Court against the administrator in a proceeding to which the surety was not a party, (1) where the Probate Court had exceeded its jurisdiction, or (2) where the Probate decree had been obtained by fraud or collusion, or (3) where the obligation of the surety's contract did not cover the alleged liability.

In an action against the surety on a sheriff's official bond, we have held that a judgment obtained against the principal for moneys received by him in his official capacity was *prima facie* evidence of the breach of the condition of the bond. *Treasurers of State v. Bates*, 2 Bailey (17 S. C. L.) 362; *State ex rel. Coleman v. Cason*, 11 S. C. 392.

Appellant being obligated under the "indemnity agreement" to pay "any amount that may be due and owing" by

Carver to the respondent, and such obligation being in no-wise conditioned upon Carver's dishonesty, respondent's judgment against Carver was evidence of an indebtedness on the latter's part within the contemplation of appellant's con-tract. Like reasoning to that of the replevin bond cases be-fore cited would stamp it, therefore, as conclusive evidence of Carver's indebtedness and of appellant's consequent lia-bility up to the amount specified in that contract. But whether the judgment be considered as conclusive or as *prima facie* evidence, we arrive at the same result, for the only ground upon which appellant sought to oppose it from an evidentiary standpoint was that the debt which it repre-sented had not arisen from a dishonest act on Carver's part. It could not be assailed upon that ground, for appellant's obligation was not so limited. The other grounds upon which appellant sought to assail it were directed not to its eviden-tiary quality, but to its validity.

The validity of the judgment was not immune from col-lateral attack by appellant; but such attack could have been made only: (1) by reason of jurisdictional defect apparent on the face of the record of the cause in which it was ren-dered, *Fouche v. Royal Indemnity Co. of New York,* 217 S. C. 147, 60 S. E. (2d) 73; (2) by proof of fraud or collusion in its procurement, *First Carolinas Joint Stock Land Bank of Columbia v. Knotts,* 191 S. C. 384, 1 S. E. (2d) 797; or (3) by proof that it had been paid, *Bolt v. Milam, supra.* No such showing was attempted.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.